**COOPER, Treasurer, etc. v HAYNES, et**

Ohio Appeals, 9th Dist, Summit Co
No 1889. Decided Dec. 30, 1930

Don Isham, Prosecuting Attorney and Merryl F. Sicherman, Ass't Pros. Atty., both of Akron, for Cooper.

Commins, Brouse, Englebeck & McDowell and Robert S. Dechant, all of Akron, for Defendants The Central Depositors Bank & Trust Co., Guardian of Harry G. Haynes, etc.; John Harner & Sadie Harner; and The Central Depositors Bank & Trust Co.

Meade & Weygandt, Akron, for defendant The Hudson Lumber Co.

S. C. Colopy, Akron, for Defendants. The Kenmore Investment Co and H. U. Gardner.

Ralph J. Myers, Kenmore, for defendants Ralph J. Myers and Benjamin Reed.

**180**

**FUNK, PJ.**

Hence, the sole question at issue is, Does a valid and subsisting mortgage upon real estate, with condition broken, or a live judgment upon which execution has been issued and levied upon real estate, create a defective title to such real estate within the meaning of **8317 GC?** Said section reads as follows:

"Any person furnishing labor, machinery, material or fuel for the erection of a new building or structure upon land to which the person contracting for such erection has no legal title or to which the title shall be defective, shall have a lien therefor upon such building or structure, and the forfeiture or surrender of any title or claim of title, or equitable interest by such contracting person to such land shall not defeat the lien upon such building or structure of such person furnishing labor or material, as aforesaid. In case the property covered by a lien is held by the vendee in a land-contract, or by a lessee, and he surrenders or forfeits his rights thereunder, the person or persons holding such liens may be subrogated to the rights of such vendee or lessee, as his rights existed immediately before such surrender or forfeiture, by performing the covenants contained in such contract or lease within thirty days after he shall have actual notice of such forfeiture. Any lien claimant may pay off any prior recorded lien, incumbrance or mortgage, and shall thereupon be subrogated to all the rights of the prior holder of such lien,

incumbrance or mortgage."

It is a well established rule that the intention of the legislature must be gathered from the language used and all the provisions of the law bearing upon that particular subject, and that the language of a statute should be construed in the common acceptance of the meaning of the words used and consistent with the common sense of the community, in the absence of anything in the statute showing that a different meaning was intended.

Thompson on Real Property, in Vol. 3, Sec. 2315, in discusing the subject of "title," says:

"It signifies, not the fact of his possession, but his right of possession. Sometimes the word 'title' is used in a general sense, as including any title or interest; but 'title' in common acceptance, and when used in reference to real property, implies an estate in fee. When we speak of a man as having title to certain lands, the ordinary understanding is that he is the owner of the fee. A person is said to have title to that over which he may of right exercise an exclusive dominion."

It is apparent that under the above rules the legislature intended the words "legal title" to mean an estate in fee, and when the legislature used the term "no legal title" it meant a title something less than a fee, and when it used the term "land *** to which the title shall be defective" it had reference to some defect in an apparent legal title; that is, some defect in the recorded chain of title.

It will be observed that said **8317 GC** specifically provides for the protection of the mechanic's lien holder only upon a **new building or structure,** under three separate contingencies: the first contingency gives a lien on the buildings alone when the contracting person has no legal title or the title is defective, and further provides that if such person forfeits or surrenders his claim of title or equitable interest, that shall not defeat the lien on the building; the second makes special provision for the mechanic's lien holder to be subrogated to the rights of the contracting person where the land is held by land contract or lease and such person surrenders or forfeits his rights thereunder; and the third provides that a mechanic's lien holder may pay off and be subrogated to the rights of a prior lien, incumbrance or mortgage.

It is thus seen that this section in and of itself clearly recognizes that a lien or mortgage may be upon the real estate at the time the construction of a new building is commenced and that it is not a defect in the title. This section also recognizes an equitable interest as practically synonymous with a defective title, and makes a distinction between a defective title, or equitable interest, and a land contract or lease, and a lien, incumbrance or mortgage. It was therefore evidently not the intention of the legislature that a mortgage or judgment lien would create a defective title.

Furthermore, **8321 GC,** which provides when a mechanic's lien shall attach, the period it shall continue, and within what time foreclosure proceedings may be commenced, also provides that the mechanic's lien holders shall have no priority among themselves, except that those performing manual labor shall have a preference for labor performed within thirty days of the last labor, and designates over what other liens and incumbrances the mechanic's liens shall have a preference.

Concerning the priority as to other liens, said section reads—

"Second. They shall be preferred to all other titles, liens or incumbrances, which may attach to or upon such construction, excavation, machinery, or improvement, or to, or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said construction, excavation, or improvement."

It will be observed that priority is given to mechanic's liens over other liens and incumbrances only when "given or recorded subsequent to the commencement of said construction, excavation or improvement." The only reasonable inference to be drawn from this section is that all other titles, liens or incumbrances given before the commencement of the improvement are recognized as liens having priority and not as defects in the title.

Moreover, it must be remembered that the mechanic's lien is purely statutory and that there is no right of lien on the property of the owner except such as is given by statute; that the mechanic's lien law provides in detail when, how and by whom such liens may be obtained and how the lien holder and the owner may protect their respective rights; and that the statutes creating mechanic's liens were conceived in equity and are based upon and

justified only upon the elementary principle that when a building is constructed upon land it becomes a part of the real estate, thereby increasing its value, and that it is only equitable and just that the persons who contributed labor and material to the improvement are entitled to look to the whole property for compensation.

40 C. J., "Mechanics' Liens," p. 44, sec. 5.

**111 Oh St 595, Hummer v. Parsons.**

**16 Oh Ap 387, Shoe Co. v. Shoe Co.**

It is upon this equitable principle that the several sections of the mechanic's law, except said Sec. 8317, provide for such lien on the building only as a part of the real estate and that such lien shall attach only to "the interest, leasehold or otherwise of the owner, part owner or lessee *** at the time the work was commenced or materials were begun to be furnished *** and also to *** any subsequent acquired interest" therein.

It is thus clearly the purpose of said Sec. 8317 to extend this equitable principle far enough to give the laboring man and material man a lien on the building alone, only in the event the person contracting for the building does not have a fee simple or legal title to the land, as it will be noted that when the land is held by land contract or lease, this section gives the mechanic's lien holder only the right to be subrogated to the rights of such vendee or lessee, respectively, should they abandon such contract or lease, and does not provide for a lien on the building alone irrespective of the contract or lease. It will also be noted that this section specifically provides only that the mechanic's lien holder "may pay off any prior recorded lien, incumbrance or mortgage" and be subrogated thereto, and does not provide for a lien on the building apart from the land.

While the title to real estate on which there is an uncanceled mortgage or against which there is a judgment, may sometimes be spoken of as defective in connection with the sale of real estate or the offering of it as security for money loaned, the existence of such mrotgage or judgment in reality constitutes a mere incumbrance or lien upon the legal title, rather than a defect in the title. We are therefore clearly of the opinion that to make a title defective within the meaning of said Sec. 8317, there must be some defect which is not a mere lien with a definite amount due as security for a debt, which can be removed by the owner at will by the payment of the debt, but rather there must be some adverse claim affecting the fee itself and going to the right to exercise dominion over the premises involved.

It thus follows that a valid and subsisting mortgage with condition broken, or a live judgment upon which execution has been issued and levied, does not create a "defect" in the title to the real estate incumbered by them, within the meaning of said **8317 GC.**

Decree accordingly.

Pardee, J, and Washburn, J, concur.